UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LA'TOYA R.,[1] | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-01564-JMS-TAB |
| | ) | |
| FRANK BISIGNANO,[2] | ) | |
| *Commissioner of Social Security*, | ) | |
| | ) | |
| *Defendant*. | ) | |

## **ORDER**

Plaintiff La'Toya R. applied for a period of disability and disability insurance ("DIB") from the Social Security Administration ("SSA") on July 8, 2022, with an alleged disability onset date of April 30, 2022. [Filing No. 8-5 at 2; Filing No. 8-5 at 6.] Her applications were denied initially on October 24, 2022, and upon reconsideration on April 13, 2023. [Filing No. 8-4 at 3; Filing No. 8-4 at 8; Filing No. 8-4 at 20; Filing No. 8-4 at 24.] On January 23, 2024, Administrative Law Judge ("ALJ") Teresa Kroenecke held a telephonic hearing before issuing a decision on February 27, 2024, in which she concluded that La'Toya R. was not entitled to benefits. [Filing No. 8-2 at 37; Filing No. 8-2 at 31.] The Appeals Council denied review on July 22, 2024. [Filing No. 8-2

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano automatically became the Defendant in this case when he was sworn in as Commissioner of the Social Security Administration on May 7, 2025, replacing Acting Commissioner of the Social Security Administration Leland C. Dudek.

at 1-6.]  On September 12, 2024, La'Toya R. filed this civil action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. 1383(c), seeking a review of the denial of her benefits.  [Filing No. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Administration provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019).  Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Hess v. O'Malley*, 92 F.4th 671, 677 (7th Cir. 2024) (quoting 42 U.S.C. § 423(d)).

When an applicant appeals an adverse benefits decision, the Court "will reverse an ALJ's decision only if it is the result of an error of law or if it is unsupported by substantial evidence." *Martin v. Kijakazi*, 88 F.4th 726, 729 (7th Cir. 2023) (citing *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)).  Substantial evidence is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154).  "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citation omitted).  Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)).  "But even under this deferential standard of review, an ALJ 'must provide a logical bridge between the evidence and [the] conclusions.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Hess*, 92 F.4th at 677 (citations omitted); 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4). The ALJ must evaluate the following, in sequence:

(1) whether the claimant is currently [un]employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner];

(4) whether the claimant can perform [her] past work; and

(5) whether the claimant is capable of performing work in the national economy.

*Hess*, 92 F.4th at 677 (quoting *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001)). A claimant is disabled if she satisfies Steps One, Two, and Three. *Gedatus*, 994 F.3d at 898. If a claimant satisfies Steps One and Two, but not Step Three, the claimant must then satisfy Step Four to be found disabled. *See id.* "The burden of proof is on the plaintiff at steps one through four, but the burden shifts to the Commissioner at step five." *Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). "[I]f the ALJ can make a conclusive finding at any step that the claimant either is or is not disabled, then she need not progress to the next step." *Hess*, 92 F.4th at 677-78 (quotations and citation omitted).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC"), which is an assessment of "the most an individual can work despite his or her limitations or restrictions." *Jarnutowski*, 48 F.4th at 773 (citation omitted). An ALJ must consider seven strength functions when assessing a claimant's RFC to work: "lifting, carrying, sitting, standing, walking, pushing, and pulling." *Id.* at 773-74 (citing SSR 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996)). An ALJ must also describe "how the evidence supports each conclusion [on strength functions], citing specific medical facts (e.g., laboratory findings)

and nonmedical evidence (e.g., daily activities, observations)." *Jarnutowski*, 48 F.4th at 773 (quoting SSR 96-8p, 61 Fed. Reg. at 34478).  "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe and may not dismiss a line of evidence contrary to the ruling." *Id.* at 774 (quotations and citation omitted).  "Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Id.* (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)).  The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 404.920(a)(4)(iv), (v).

If the ALJ's decision "uses the correct legal standards, is supported by substantial evidence, and builds an accurate and logical bridge from the evidence to the ALJ's conclusions," the Court must affirm the denial of benefits.  *Hess*, 92 F.4th at 677 (quotations and citation omitted); *Chavez v. O'Malley*, --- F.4th ---, 2024 WL 1228980, at *3 (7th Cir. Mar. 22, 2024).  But if the ALJ's decision "is based on incorrect legal standards or unsupported by substantive evidence," the Court will remand for further consideration.  *Baptist v. Kijakazi*, 74 F.4th 437, 441 (7th Cir. 2023) (citations omitted).

## II.
### BACKGROUND

La'Toya R. was 45 years of age on her alleged onset date.[3]  [*See* Filing No. 8-5 at 2.]  She has a high school education and previously worked as a store laborer and plastic hospital products assembler prior to the onset of her alleged disability.[4]  [Filing No. 8-2 at 46-50.]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that La'Toya R. was not disabled.  [Filing No. 8-2 at 19.] Specifically, the ALJ found as follows:

- At Step One, La'Toya R. had not engaged in substantial gainful activity[5] since April 30, 2022, the alleged onset date.  [Filing No. 8-2 at 20.]

- At Step Two, La'Toya R. has the following severe impairments: lumbar degenerative disc disease; right knee degenerative joint disease; bilateral carpel tunnel syndrome; bilateral hand degenerative joint disease; and obesity.  [Filing No. 8-2 at 21.]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 8-2 at 22-24.]

- After Step Three but before Step Four, La'Toya R. had the RFC to perform "light work as defined in 20 CFR 404.1567(b) . . . except: occasionally balance, stoop, crouch, and climb ramps and stairs; never kneel, crawl, or climb ladders, ropes, or scaffolds; avoid all exposure to wetness, vibrations, or hazards, such as unprotected heights or dangerous machinery; frequently handle or finger with the bilateral upper extremities; requires the option to alternate into the sitting position from the standing and/or walking positions every 30 to 45

---

[3] The ALJ determined that La'Toya R. meets the insured status requirements of the Social Security Act through December 31, 2027.  [Filing No. 8-2 at 20.]

[4] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here.  Specific facts relevant to the Court's disposition of this case are discussed below.

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

minutes, for 2 to 3 minutes, while remaining at the work station; and requires the option to alternate into the standing position from the sitting position every 30 to 45 minutes, for 2 to 3 minutes, while remaining at the work station." [Filing No. 8-2 at 24.]

- At Step Four, La'Toya R. was unable to perform any past relevant work. [Filing No. 8-2 at 28-29.]

- At Step Five the ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform" and therefore she was not disabled from April 30, 2022, through the date of the decision. [Filing No. 8-2 at 29-30.]

## III.
### DISCUSSION

LaToya R. present three broad categories of argument, (1) that the ALJ's analysis of Dr. Jerryl Simmons' consultative examination report is "internally inconsistent," (2) that the ALJ "failed to explain the RFC findings and provided limitations not supported by the evidence," and (3), that the ALJ "failed to properly address SSR 16-3p" when evaluating La'Toya R.'s subjective symptoms and relaying the resulting analysis to the vocational expert. [Filing No. 10 at 4.] The Court begins its analysis with the dispute over Dr. Simmons' consultative examination report.

La'Toya R. argues that the ALJ's analysis of Dr. Jerryl Simmons's consultative examination report is "internally inconsistent." [Filing No. 10 at 11.] She states that "the ALJ first found [Dr. Simmons'] opinion to be partially persuasive," but later in the decision "d[id] not find this opinion persuasive given the lack of support from the evidence of record." [Filing No. 10 at 11.] She states that these two findings are "irreconcilable, requiring a remand to the agency for new findings." [Filing No. 10 at 11.] La'Toya R. argues further that the ALJ erroneously "play[ed] doctor by finding Dr. Simmons' opinion to be unsupported by the evidence of record including mild imaging results and mild to moderate physical examination findings." [Filing No. 10 at 12.] La'Toya R. additionally argues that the ALJ "failed to consider that Dr. Simmons' opinion may

6

have stemmed from [her] chronic pain, rather than from a lack of strength, range of motion, or sensation in her lower extremities." [Filing No. 10 at 12.] She states that in not considering that possibility, the ALJ did not adequately support discounting "Dr. Simmons' opinion about [her] total sitting and standing limitations." [Filing No. 10 at 13.] La'Toya R. argues that "[t]o address the criticism of vagueness," federal regulations require the ALJ to seek "additional clarification before discounting it outright." [Filing No. 10 at 11 (citing 20 C.F.R. § 416.919p).]

In the Commissioner's response, he argues that the "ALJ [r]easonably [a]ssessed Dr. Simmons' [o]pinion." [Filing No. 12 at 5.] He states that the ALJ followed applicable regulations by evaluating Dr. Simmons' "medical opinion" for "supportability and consistency," the "two most important factors." [Filing No. 12 at 5.] He states that the ALJ simply evaluated two separate aspects of Dr. Simmons' report and found the "limitation in the ability to sit" to be "partially persuasive" because of "mild imaging findings, coupled with her positive straight leg raise test and slow and antalgic gait, but balanced against her full leg strength, independence in walking, and her conservative treatment overall." [Filing No. 12 at 6.] The ALJ found that those mild imaging results made Dr. Simmons' assessment of a restriction of sitting in "total no more than 2 hours of an 8-hour workday" unpersuasive. [Filing No. 12 at 6.] The Commissioner notes that the ALJ referred to "improved pain and weight bearing following physical therapy and injections" and "her daily ongoing activities," including "attending medical appointments and cooking simple meals for 25 minutes at a time," indicating that La'Toya R. could perform "light work" and was not "limit[ed] to occasional sitting." [Filing No. 12 at 7.] The Commissioner states that federal regulations do not require an ALJ to seek clarification of a medical opinion, so "the ALJ was under no obligation to recontact Dr. Simmons to cure his opinion's vagueness," and in any event, there

was sufficient evidence in the record to determine that La'Toya R. was not disabled.  [Filing No. 12 at 7 (citing 20 C.F.R. § 416.920b(b)(2)(i)).]

La'Toya R. did not file a reply.

### A.    Recontacting a Consultative Examiner

The ALJ discounted Dr. Simmons' opinion as "vague."  [Filing No. 8-2 at 24.]  The parties dispute the way the ALJ discounted Dr. Simmons' consultative examination report because it was vague by not including more assessments of La'Toya R.'s functional abilities and limitations.  The dispute centers around two potentially conflicting regulations.  The Court first addresses which section controls before turning to applying the appropriate section to the case at hand.

The conflicting regulations are 20 C.F.R. § 416.919p and 20 C.F.R. § 416.920b(b)(2)(i).[6] 20 C.F.R. § 416.919p is titled "[r]eviewing reports of consultative examinations," and it states that if a consultative examiner's "report is inadequate or incomplete, [the Commissioner] will contact the medical source who performed the consultative examination, give an explanation of [the] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report."  20 C.F.R. § 416.919p(b).  In comparison, Section 416.920b is titled "[h]ow we consider evidence," and it states in relevant part that if the Commissioner is not able "to make [a] determination" because "the evidence in your case record is insufficient or inconsistent," the Commissioner "may recontact your medical source."  20 C.F.R. § 416.920b(b)(2)(i).  In sum, if Section 416.919p controls, then the ALJ was required to recontact Dr. Simmons, but if Section 416.920b controls, then the ALJ was not required to recontact Dr. Simmons.  Neither of the parties elaborate beyond these regulations, and the caselaw they cite does not juxtapose the regulations

---

[6] The Commissioner refers to Section 416.920b(c), [Filing No. 12 at 7], but the regulatory provision is actually Section 416.920b(b)(2)(i).

together to determine how to resolve this conflict. The Court thus will examine the text of the regulations, interpret their ordinary meaning, and determine which controls in this case.

The Court observes the regulatory provisions differ in the scope. Section 416.920b(b)(2)(i) extends to insufficiencies and inadequacies of the entire "case record," whereas Section 20 C.F.R. § 416.919p addresses insufficiencies and inadequacies solely of a consultative examiner's report. Here, the challenge is to the "vagueness" of only Dr. Simmons' report. There is no allegation of an insufficient or inadequate record of the entire case. Accordingly, § 416.919p controls because the scope of issue matches the scope of 20 C.F.R. § 416.919p. Additionally, Section 416.919p is more specific than Section 419.920(b) and this distinction supports the holding that Section 416.919p applies in this case and Section 416.920b(b)(2)(i) does not. *See Nat'l Cable & Telecommunications Ass'n, Inc. v. Gulf Power Co.*, 122 S. Ct. 782, 787 (2002) (holding that "specific statutory language should control more general language when there is a conflict between the two" and "[t]he specific controls . . . within its self-described scope"); *In re Gulevsky*, 362 F.3d 961, 963 (7th Cir. 2004) (observing that "when both a specific and a general provision govern a situation, the specific one controls"). This provision is mandatory: the Seventh Circuit has explained that under 20 C.F.R. § 416.919p, if an ALJ considers the consultative examiner's report to be "vague," or otherwise "deficient," the ALJ should seek "additional clarification before discounting it outright." *Paul v. Berryhill*, 760 F. App'x 460, 463-64 (7th Cir. 2019) (vacating and remanding where ALJ assigned a "vague" consultative examiner's report "little weight").

The Court proceeds to apply 20 C.F.R. § 416.919p. Dr. Simmons' report memorialized a consultative examination. [Filing No. 8-2 at 24 (ALJ describing how La'Toya R. "attended a consultative examination, conducted by Jerryl Simmons, M.D.").] The ALJ considered Dr. Simmons' consultative examination report to be "vague" because it "only addressed [La'Toya R.'s]

sitting tolerance, but did not indicate reasonably associated standing, walking, postural, or environmental limits." [Filing No. 8-2 at 25.] The Court finds that this description equates to Dr. Simmons' consultative examination report being "inadequate," "incomplete," and/or "missing information" within the meaning of 20 C.F.R. § 416.919p. Therefore, under Section 416.919p, the ALJ was required to recontact Dr. Simmons for clarification, and not doing so was error. 20 C.F.R. § 416.919p.

To be sure, not recontacting Dr. Simmons had significant consequences for the ALJ's analysis because after the ALJ considered Dr. Simmons' report to be incomplete or otherwise deficient, the ALJ attempted to fill in the gaps with her own analysis of functional abilities that were not explained by Dr. Simmons. [Filing No. 8-2 at 25.] The ALJ explained that "[f]urther limitation[s]" to La'Toya R.'s functional capacity "would be unwarranted," in part because there was "no treating medical source statement to the contrary to consider and weigh." [Filing No. 8-2 at 28.] That "medical source statement" might have included that of Dr. Simmons if the ALJ applied Section 416.19p and re-contacted him to fully assess La'Toya R.'s functional limitations. This error is not harmless given a proper consultative examination report could have altered how the ALJ considered other evidence, including La'Toya R.'s daily activities, alleged conservative treatment, and her allegations of pain. As the ALJ identified, a less-vague consultative examination report would include "standing, walking, postural, or environmental limits." [Filing No. 8-2 at 26.] That might clarify the functional impact of swelling in La'Toya R.'s hands, the tenderness in her shoulders and knees, her inability to button her clothes, her inability to "fully close all fingers into fists bilaterally," her slow ability to "pick[] up a coin" with two hands, and other medical findings. [Filing No. 8-7 at 8.] These unknown implications counsel a remand

because the Court is not "convinced" that the ALJ would reach the same result on remand. *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) (citation omitted).

Because the Court has ruled on these issues of Dr. Simmons' report, it need not consider other matters raised by the parties, including whether the ALJ "failed to explain the RFC findings and provided limitations not supported by the evidence," as well as whether the ALJ "failed to properly address SSR 16-3p" when evaluating La'Toya R.'s subjective symptoms and relaying the resulting analysis to the vocational expert.  [Filing No. 10 at 4.]  Indeed, further analysis may well be imprudent given the analytical uncertainty derived from the inadequate consultative examination report.  On remand, the ALJ should ensure that the remaining issues raised by La'Toya R. are adequately addressed as necessary.

### B.    Analysis of a Medical Opinion on Remand

As additional guidance to the ALJ on remand, the Court observes that the Seventh Circuit recently clarified how an ALJ should consider certain kinds of medical evidence, including a medical opinion. *Jones v. Dudek*, 134 F.4th 991 (7th Cir. 2025).  "Before 2017, the regulations distinguished between '[o]bjective medical evidence' and '[o]ther evidence from medical sources.'" *Id.* at 993 (quoting 20 C.F.R. §§ 404.1512(b)(1), 416.912(b)(1) (2015) (amended 2017)). "Objective medical evidence" included a "medical opinion," which formerly meant "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions." *Id.* (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (2015).  When the Social Security regulations underwent a significant overhaul, the definition of "medical opinion" changed – a "medical opinion" still includes a medical source's analysis of the claimant's functional ability, which is the "ability to perform physical demands of work activities, such as sitting [and]

standing," but a "medical opinion" no longer includes a medical source's diagnosis, prognosis, or assessment of the severity or nature of a claimant's medical condition. 20 C.F.R. § 416.913(a)(2). Now, current regulations cabin those assessments into "[o]ther medical evidence." *Id.* at (a)(3). This is meaningful because the regulations require an ALJ to analyze a "medical opinion" for its "supportability" and "consistency" but there is no such requirement for "other medical evidence." 20 C.F.R. § 404.1520c(c).

In this case, Dr. Simmons used the word "occasional" to describe how long and often La'Toya R. could sit. [Filing No. 8-7 at 9 (assessing La'Toya R. as being able to sit on an "occasional basis").] The Court considers Dr. Simmons' finding of "occasional" for sitting within *Jones*'s application of "medical opinion"–it describes what LaToya R. "can still do despite [her] impairment(s)" regarding her ability to "perform physical demands of work activities, such as sitting." *Jones*, 134 F.4th at 993 (quoting 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2)) Accordingly, the ALJ must evaluate "the persuasiveness of [Dr. Simmons'] medical opinion[]" for its "supportability" and "consistency." 20 C.F.R. §§ 404.1520c, 416.920c. The evaluation also must "articulate" and "explain" how the ALJ "considered the supportability and consistency factors" in her decision. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The Court reminds the ALJ about the importance of following these regulations in light of the well-established holding that an ALJ may not "play doctor" by interpreting the significance of medical findings without the assistance of a medical expert. *See Baptist v. Kijakazi*, 74 F.4th 437, 441-42 (7th Cir. 2023). Indeed, the Seventh Circuit has been "especially critical of ALJs' attempts to deduce the meaning" of medical images "without medical assistance." *Id.* at 443.

## IV.
### CONCLUSION

The Court **VACATES** the decision of the Commissioner and **REMANDS** to the Social

Security Administration.


Date: 5/15/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Elisa Donohoe
SSA
lisa.donohoe@ssa.gov

Kirsten Elaine Wold
Hankey Marks & Crider
kwold@hankeylaw.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov